**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**July 22, 2026**

# In the Court of Appeals of Georgia

A26A1029. JPMORGAN CHASE BANK, N.A. v. HALL.

HODGES, Judge.

This appeal arises from the trial court's judgment against plaintiff JPMorgan Chase Bank, N.A. ("JPMC") and in favor of defendant Ronnie L. Hall in this suit to collect on a credit account. The trial court's judgment was based solely on its finding that JPMC failed to show by a preponderance of the evidence that it is the real party in interest entitled to recover on the account. On appeal, JPMC argues that the trial court committed reversible error in finding that it lacked standing to collect on the account. We agree and reverse.

"A trial court's decision with respect to standing will not be reversed absent clear error, although we review de novo any questions of law inherent in that

decision." *Harden v. Banks County*, 294 Ga. App. 327, 328(1) (670 SE2d 133) (2008). Here, JPMC bears the burden of proving "the jurisdictional fact that it is the real party in interest ... entitled to collect the debt." *Carden v. Unifund CCR, LLC*, 353 Ga. App. 335, 336 (836 SE2d 649) (2019) (citation and punctuation omitted). See also *Greenstein v. Bank of the Ozarks*, 326 Ga. App. 648, 653(2) (757 SE2d 254) (2014) (noting that a bank must establish its status as the real party in interest).

So viewed, the record shows that JPMC sued Hall on September 12, 2024, to collect an unpaid balance of $6,969.44 on a credit account ending in 3489. An affidavit signed by a JPMC authorized signing officer indicates that on May 18, 2019, Chase Bank USA, N.A. ("Chase Bank"), merged "with and into" JPMC, and the officer has access to Chase Bank's business records. According to those business records, Hall opened a credit account ending in 3489 with "[JPMC] or its predecessor" on April 17, 2019. Hall continued to use the 3489 account after the banks merged and until February 11, 2023. He last paid a portion of his accrued account debt on August 29, 2023, and the debt on the account totaled $6,969.44 at the time of the lawsuit.

In May 2025, the case was called for a bench trial. Hall did not appear for the trial. However, even without Hall appearing, the trial court ruled in his favor after

finding that JPMC "failed to show by a preponderance of the evidence that it is entitled to recover on [the] credit account." According to the trial court's order, JPMC's "only sworn evidence cannot even identify the entity with which [Hall] opened his accounts, which falls far short of the burden [JMPC] bears to prove proper assignment of the account[]." In its order, the court relied on the decision of *Wirth v. Cach, LLC*, 300 Ga. App. 488 (685 SE2d 433) (2009), and the JPMC affidavit phrase "opened an account with Plaintiff or its predecessor." This appeal followed.

The question before this Court is whether JPMC met its burden of proving that it is the real party in interest entitled to collect on Hall's account.

"The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it." *Wirth*, 300 Ga. App. at 489 (citation and punctuation omitted). Typically, that means that a non-party to a contract may only collect on a debt if a party to the contract assigns the contractual right to collect payment, including the right to sue to enforce the right. Id. This assignment is required to be in writing, and the writing must identify the assignor and assignee. Id. Accordingly, in a traditional assignment of credit card debt, the chain of assignment must be clear, and the non-party must produce direct evidence that specifically links the account to the

assigning parties. See *Benson v. Asset Acceptance, LLC*, 310 Ga. App. 1, 1-2 (712 SE2d 83) (2011) (holding that there was no evidence that Citibank South Dakota, who issued a credit card to the defendant, assigned the defendant's account to Citibank USA or that Citibank USA otherwise acquired rights to the defendant's account, and thus Asset Acceptance, as Citibank USA's assignee, was not a real party in interest entitled to bring a suit against the defendant).

However, when two banks merge in Georgia, the surviving bank automatically acquires all rights to enforce debts owed to the predecessor bank without the necessity of a separate assignment. Under Georgia's banking merger statute,

> [w]hen a merger or consolidation becomes effective, each party to the plan, except the resulting bank or trust company, shall cease to exist as a separate entity but shall continue in, and the parties to the plan shall be, a single corporation which shall be the bank or trust company and which shall have, without further act or deed, all the property, rights, powers, trusts, duties, and obligations of each party to the plan.

OCGA § 7-1-536(c). See also OCGA § 14-2-1106 (providing that when a corporate merger occurs, "[t]he title to all real estate and other property owned by, and every contract right possessed by, each corporation or entity party to the merger is vested in the surviving corporation or entity without reversion or impairment, without

4

further act or deed, and without any conveyance, transfer, or assignment having occurred"). This statutory framework eliminates the need for a formal transfer or assignment of the predecessor bank's property, including its ability to collect credit card debt, to the consolidated bank. *State Bank & Trust Co. v. Newby*, 170 Ga. App. 865, 866(1) (318 SE2d 738) (1984). As our Supreme Court has held, "[w]hen corporations merge, state law provides that the title to each corporation's property vests in the surviving corporation without any conveyance, transfer, or assignment[.]" *Nat'l City Mtg. Co. v. Tidwell*, 293 Ga. 697, 700(2) (749 SE2d 730) (2013). In other words, "the two corporations are deemed the same entity under federal and state law by virtue of their merger[.]" Id at 701(2).

Here, the trial court relied on *Wirth*, supra, to find that JPMC failed to "prove proper assignment of the accounts." That reliance is misplaced. In *Wirth*, the parties in question did not merge, and thus this court was correct in determining that there was a lack of evidence showing a proper assignment of an account between the original creditor and the new creditor. 300 Ga. App. at 490. However, as noted above, under Georgia banking and corporate merger statutes, the surviving bank automatically acquires all rights to enforce debts owed to the predecessor bank without requiring a

5

separate assignment. OCGA §§ 7-1-536(c), 14-2-1106; *Newby*, 170 Ga. App. at 866(1). It is undisputed in this case that Chase Bank merged "with and into" JPMC, and therefore any assignment of Chase Bank's credit accounts to JPMC is automatic. *Tidwell*, 293 Ga. at 700(2); *Newby*, 170 Ga. App. at 866(1). Even so, this fact does not end our inquiry.

To establish standing to sue on an account established with a predecessor bank, the successor bank must not only show that a merger occurred, *Newby*, 170 Ga. App. at 866(1), but it must also show that it acquired the outstanding debt in the merger; meaning, the debtor owed the money to the predecessor bank before the merger. *Melman v. FIA Card Servs.*, 312 Ga. App. 270, 272(2) (718 SE2d 107) (2011) ("To show it was entitled to judgment against [the defendant] on the credit card account, [the successor bank] was required to show that [the defendant] entered into an agreement or established an account with [the successor or predecessor bank], accumulated a balance[,] and failed to pay[.]"). A bank's "proof of its right to collect on an account is more than a pro forma exercise; rather, such proof is necessary for the [bank] to establish its prima facie case." *Carden*, 353 Ga. App. at 337-38(1) (citation and punctuation omitted) (reversing summary judgment awarded to a

6

creditor after finding no evidence in the record permitting a reasonable inference that one of the parties had transferred the indebtedness on the defendant's account to another party); *Ponder v. CACV of Colorado, LLC*, 289 Ga. App. 858, 859 (658 SE2d 469) (2008) (reversing a grant of summary judgment to a creditor when the record did not support the creditor's allegation that it was the successor-in-interest to a right to recover an outstanding debt).

Clearly, the record in this case shows that JPMC was entitled to collect any outstanding debt owed to Chase Bank when it merged with JPMC. We thus turn to the question of whether JPMC proved that Chase Bank owned Hall's indebtedness at the time of the merger. *Melman*, 312 Ga. App. at 272(2); *Ponder*, 289 Ga. App. at 859. While we agree with the trial court that the affidavit of JPMC's authorized signing officer does not specifically state that Hall opened his credit account with Chase Bank — it merely states that Hall opened an account with "Plaintiff or its predecessor[,]" which could, in theory, be any bank — reading the affidavit as a whole, we find the "reasonable inference" is that the "predecessor" referred to in the affidavit is Chase Bank. See *Carden*, 353 Ga. App. at 337(1) (viewing the evidence and its reasonable inferences in reaching its conclusion); *Wirth*, 300 Ga. App. at 491

(viewing the evidence "together with the reasonable inferences from it" in reaching its decision) (citation and punctuation omitted). The affidavit in this case (1) only mentions JPMC and Chase Bank, (2) refers to JPMC as the "successor by merger to Chase Bank[,]" (3) specifically notes that Chase Bank "merged with and into" JPMC, (4) refers to both entities as "Plaintiff," (5) indicates that the statements made by the affiant are based on her "personal knowledge obtained from [her] review of Plaintiff's [b]usiness [r]ecords[,]" (6) states that "Plaintiff's [b]usiness [r]ecords show that [Hall] opened an account with Plaintiff or its predecessor[,]" (7) notes that the last four digits of the account are 3489, and (8) attaches a billing statement issued by Chase to Hall for his account ending in 3489. Based on this evidence, we conclude that Hall opened his credit account ending in 3489 with Chase Bank, and the outstanding debt on his account was transferred to JPMC when the banks merged.

In conclusion, the trial court erred in finding in favor of Hall based strictly on JPMC's failure to prove it is the real party in interest entitled to recover on the 3489 account. The affidavit provided by JPMC's authorized signing officer is sufficient to establish JPMC's standing to recover on the account.

*Judgment reversed. Barnes, P. J., and Markle, J., concur.*

8